**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JACK ABERMAN**<br><br>*Plaintiff,*<br><br>v.<br><br>**NEWREZ, LLC d/b/a SHELLPOINT MORTGAGE SERVICING et al.,**<br><br>*Defendants.* | **Case No. 2:26-cv-00918-JDW** |

## MEMORANDUM

A bankruptcy discharge changes what a creditor may collect from a debtor personally. It does not necessarily eliminate the creditor's rights against a property. And when a state court decides that a creditor may foreclose, the borrower's remedy is an appeal in that court system, not a new lawsuit in federal court. Jack Aberman nevertheless asks me to intervene in state court foreclosure proceedings. He alleges that various mortgage servicers that serviced loans relating to dozens of properties that he owned or controlled had no authority to continue servicing his loans or foreclose on those properties after his bankruptcy proceedings. He packages those allegations as claims under the Real Estate Settlement Procedures Act, the Fair Debt Collection Practices Act, and the Declaratory Judgment Act.

Those claims, however, do not all stand on the same footing. RESPA imposes independent duties on mortgage servicers, so alleged violations of those duties do not necessarily call the foreclosure judgments into question. By contrast, Mr. Aberman's FDCPA and declaratory judgment claims depend on the premise that the companies servicing his mortgages lacked authority to foreclose and that state courts should never have entered the foreclosure judgments in the first place. Although Mr. Aberman's RESPA claims are not jurisdictionally barred, he has not plausibly pled them. His remaining claims ask me to second-guess state-court foreclosure judgments, something the *Rooker-Feldman* doctrine forbids. I will therefore dismiss the Amended Complaint.

## I. BACKGROUND

Mr. Aberman owns or controls residential rental properties in Volusia County, Florida, through GEA Seaside Investments, Inc. He alleges that NewRez, LLC d/b/a Shellpoint Mortgage Servicing and Onity Mortgage Corporation (the "Servicers") serviced mortgage loans that those properties secured. Between 2013 and 2018, Mr. Aberman and related entities commenced Chapter 11 bankruptcy proceedings involving numerous Florida properties[1] that later became the subject of the foreclosure proceedings underlying this action. Those proceedings culminated in confirmed reorganization plans

[1] Every property that Mr. Aberman identifies is in Florida, and the foreclosure proceedings, bankruptcy-related events, and alleged servicing conduct also appear to have occurred there. Neither party addresses why venue is proper in this District, and the Servicers have not moved to dismiss or transfer on that basis. I therefore express no view on the issue.

and bankruptcy discharges, which Mr. Aberman contends eliminated or otherwise affected the Servicers' ability to enforce the mortgage obligations. Notwithstanding those bankruptcy proceedings, the Servicers continued servicing the loans and pursued foreclosure proceedings against numerous properties.

The Servicers initiated approximately 33 foreclosure proceedings, obtained foreclosure judgments in many of those cases, and completed foreclosure sales on several properties. According to Mr. Aberman, the Servicers lacked authority to pursue those foreclosure proceedings but nevertheless represented to the Florida courts that they possessed the right to foreclose, filed foreclosure complaints and related collection papers, obtained foreclosure judgments, and collected foreclosure-sale proceeds.

Based on those allegations, Mr. Aberman filed this action asserting three claims under RESPA (Counts I-III), one claim under the FDCPA (Count IV), and one claim for declaratory relief (Count V). Mr. Aberman alleges that the Servicers violated RESPA by failing to provide servicing-transfer notices; failing to respond adequately to qualified written requests, notices of error, and requests for information; and improperly obtaining force-placed insurance. According to Mr. Aberman, his correspondence sought, among other things, information regarding servicing transfers, loan balances, ownership of the mortgage notes, insurance coverage, and the Servicers' authority to enforce the mortgage obligations. Mr. Aberman also alleges that the Servicers violated the FDCPA by pursuing foreclosure after his bankruptcy discharges, falsely representing that they possessed the

authority to enforce the mortgage obligations, filing foreclosure complaints and other collection communications based on that allegedly false premise, obtaining foreclosure judgments, and collecting foreclosure-sale proceeds to which they allegedly were not entitled. He seeks damages including lost equity, foreclosure-sale proceeds, lost rental income, litigation expenses, and other losses allegedly resulting from the Servicers' conduct.

The Servicers moved to dismiss the Amended Complaint ("AC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After reviewing the Motion, I directed the Parties to submit supplemental memoranda addressing whether the *Rooker-Feldman* doctrine deprives me of subject matter jurisdiction over some or all of Mr. Aberman's claims. Both sides did so, and Mr. Aberman asked for and received leave to file a response. The Servicers have asked for leave to reply on the issue. The Servicers' Motion to dismiss and for leave to file a reply are both now ripe.

## II. LEGAL STANDARD

If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Federal courts have "an independent obligation to determine whether subject-matter jurisdiction exist[s]." *Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 131 (3d Cir. 2019). Parties may raise the issue of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

A court may treat a motion under Rule 12(b)(1) "as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). For a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)[.]" *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Where, as here, a movant files a motion to dismiss before it files any answer to the Complaint or otherwise presents competing facts, its motion is "by definition, a facial attack." *Id.*

Under Rule 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether

they plausibly give rise to an entitlement to relief." *Id.* The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790. In considering a motion to dismiss, a court may also take judicial notice of matters of public record, such as state court proceedings. *See Hartig Drug Co., Inc. v. Senju Pharm. Co., Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016). Courts must construe *pro se* complaints liberally. *See Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).* In doing so, however, courts "may not rewrite a plaintiff's allegations." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 309 (3d Cir. 2003).

## III. ANALYSIS

### A. *Rooker-Feldman*

Federal courts are not appellate courts for disappointed state court litigants. The *Rooker-Feldman* doctrine precludes federal courts from entertaining "cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is rooted in the principle that the jurisdiction to reverse or modify a state court judgment is exclusively within the authority of the United States Supreme Court. *Id.* at 283. Thus, the doctrine bars a claim that was "actually litigated in a state court prior to the filing of the federal action" or is "inextricably intertwined with the state adjudication." *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). A federal claim is

"inextricably intertwined" with an issue adjudicated by a state court when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009).

The *Rooker-Feldman* doctrine applies when: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Vuyanich v. Smithton Borough*, 5 F.4th 379, 385 (3d Cir. 2021) (quotation omitted). Additionally, the United States Supreme Court recently held that the *Rooker-Feldman* doctrine applies to "federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court." *See T T.M. v. University Maryland Medical System Corp.*, 608 U.S. ___, 146 S. Ct. 1739, 1752 (2026). It further held that the doctrine applies even "when the state-judgment at issue is subject to further review in state appellate proceedings." *Id.* at 1744.

**1. RESPA claims — Counts I-III**

The *Rooker-Feldman* doctrine does not deprive me of jurisdiction Mr. Aberman's RESPA claims because those claims arise from duties that federal law imposes on mortgage servicers, not from injuries that the state-court foreclosure judgments caused. RESPA regulates the servicing of mortgage loans by requiring servicers, among other

things, to provide borrowers with servicing-transfer notices, respond to qualified written requests, notices of error, and requests for information, and comply with procedures governing force-placed insurance. *See* 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.33, 1024.35-.37. Mr. Aberman alleges that the Servicers violated each of those statutory obligations during the servicing of his mortgage loans.

The first and third *Rooker-Feldman* factors point in the Servicers' favor, at least with respect to some of the mortgage loans. Mr. Aberman lost several foreclosure actions in Florida state court before filing this action, and those judgments therefore satisfy the doctrine's procedural requirements. But those factors do not resolve the jurisdictional question. The dispositive inquiry is whether those foreclosure judgments caused the injuries underlying the RESPA claims and whether granting relief would require me to review or reject those judgments. They would not.

Mr. Aberman alleges that the Servicers failed to provide required servicing-transfer notices, failed to respond adequately to qualified written requests, notices of error, and requests for information, and violated RESPA's requirements governing force-placed insurance. Those claims arise from duties that federal law imposes on mortgage servicers, not from the foreclosure judgments themselves. The relevant question is not whether the alleged statutory violations occurred against the backdrop of foreclosure litigation. Rather, it is whether the foreclosure judgments, on one hand, or the Servicers' alleged failure to comply with RESPA, on the other hand, produced the injuries for which Mr.

Aberman seeks relief. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166-67 (3d Cir. 2010). Counts I-III concern the latter because the alleged injuries flow, if at all, from the Servicers' purported failure to satisfy independent federal duties governing mortgage servicing. *See Alfaro v. Wells Fargo Bank, N.A.*, No. 16-7950, 2017 WL 4969334, at *3 (D.N.J. Nov. 1, 2017). Thus, Mr. Aberman's allegations do not satisfy the second *Rooker-Feldman* factor.

The fourth factor also weighs against applying *Rooker-Feldman*. Adjudicating whether the Servicers complied with RESPA would not require me to determine whether any Florida court erred in entering a foreclosure judgment or authorizing a foreclosure sale. A mortgage servicer can violate RESPA's servicing obligations regardless of whether it prevails in a foreclosure action. Thus, a finding that the Servicers engaged in the conduct that Mr. Aberman alleges would establish only that the Servicers failed to comply with independent federal obligations. It would not invalidate, modify, or undermine any foreclosure judgment. Courts have recognized that RESPA claims based on a servicer's alleged failure to satisfy its statutory servicing obligations may fall outside the *Rooker-Feldman* doctrine because they arise from duties independent of the foreclosure judgment. *See, e.g.*, *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016); *Vazquez Rodriguez v. Wells Fargo Bank, N.A.*, No. 18-7959, 2019 WL 1529846, at *3 (D.N.J. Apr. 9, 2019).

The Servicers argue that the RESPA claims nevertheless amount to an attack on the foreclosure judgments because the AC repeatedly alleges that the Servicers lacked authority to foreclose. But factual overlap is not enough to trigger *Rooker-Feldman*. The doctrine asks whether the plaintiff seeks relief from injuries that the state-court judgment caused, not whether the federal claims arise from the same general events. *See Exxon Mobil Corp.*, 544 U.S. at 293. Although the foreclosure proceedings provide the factual backdrop for the RESPA claims, the legal duties that Mr. Aberman invokes arise under RESPA, not under the foreclosure judgments.

**2. FDCPA claims — Count IV**

Unlike the RESPA claims, the FDCPA claim satisfies all four *Rooker-Feldman* factors. Mr. Aberman alleges that the Servicers violated the FDCPA by engaging in false, deceptive, and misleading debt-collection practices. But he does not plead a separate FDCPA claim arising from each foreclosure proceeding. Instead, he alleges a single course of conduct spanning more than 30 foreclosure actions. Viewed that way, the first and third *Rooker-Feldman* factors are satisfied. Count IV necessarily rests, at least in part, on foreclosure judgments entered before Mr. Aberman commenced this action. The existence of other foreclosure proceedings that (a) remained pending, (b) resulted in judgments after this action began, or (c) were subject to appeal does not change that conclusion because Count IV is not pleaded on a foreclosure-by-foreclosure or property-by-property basis. *See T.M.,* 146 S. Ct. at 1749-.

The second factor is also satisfied because the foreclosure judgments themselves caused the injuries underlying the FDCPA claim. In answering that question, I look beyond the label Mr. Aberman places on his claim to determine whether the state-court judgments produced the alleged injuries or merely "ratified, acquiesced in, or left unpunished" the Servicers' conduct. *Great W. Mining*, 615 F.3d at 167. Although Mr. Aberman characterizes the claim as one arising under the FDCPA and challenging the Servicers' debt-collection practices, the theory underlying that claim depends on the proposition that the Servicers lacked authority to foreclose after his bankruptcy discharges. He alleges that the Servicers falsely represented that authority to the Florida courts, wrongfully obtained foreclosure judgments, and improperly received foreclosure-sale proceeds. The damages he seeks—including lost equity, foreclosure-sale proceeds, litigation expenses incurred defending the foreclosure actions, and related losses—flow from those foreclosure judgments and the sales that they authorized. Those injuries did not arise just because the Servicers attempted to collect debts. They arose because the Florida courts entered judgments permitting the Servicers to do so.

The fourth factor leads to the same result. Granting Mr. Aberman relief would require me to conclude that the Servicers lacked authority to foreclose and that the Florida courts therefore erred in entering the foreclosure judgments. But "[a] mortgage foreclosure … depends 'upon the existence of a valid mortgage.'" *Laychock v. Wells Fargo Home Mortg.*, No. 07-4478, 2008 WL 2890962, at *3 (E.D. Pa. July 23, 2008) (citation

omitted). Mr. Aberman cannot avoid *Rooker-Feldman* by recasting what is, in substance, a challenge to the Servicers' right to foreclose as an FDCPA claim. *See Hua v. U.S. Bank Nat'l Ass'n*, No. 14-6767, 2015 WL 1071606, at *3 (E.D. Pa. Mar. 11, 2015). If I concluded that the Servicers' foreclosure complaints and related representations were false because they lacked authority to foreclose, I would be concluding that the Florida courts erred in entering the foreclosure judgments that recognized that authority. That is precisely the type of *de facto* appellate review that *Rooker-Feldman* prohibits. *See Stephens v. Kenney*, No. 13-4483, 2014 WL 4744550, at *3 (E.D. Pa. Sept. 24, 2014); *Laychock*, 2008 WL 2890962, at *4.

**3. Declaratory relief — Count V**

Count V fares no better. Although Mr. Aberman frames it as a request for declaratory and injunctive relief, the substance of the claim mirrors his claim under the FDCPA. He asks me to declare that the Servicers lacked authority to pursue the foreclosure proceedings following his bankruptcy discharges and the confirmation of his Chapter 11 plans and that their foreclosure activities therefore violated federal law. He also seeks to enjoin the Servicers from distributing foreclosure-sale proceeds and pursuing additional foreclosure activity.

That requested relief falls within the scope of the *Rooker-Feldman* factors for the same reasons as the FDCPA claim. Mr. Aberman seeks relief from injuries arising out of foreclosure judgments entered before this action commenced, and the declaration that

he requests would require me to conclude that Florida courts should not have entered those judgments. Likewise, an injunction preventing the distribution of foreclosure-sale proceeds would necessarily interfere with the rights that those judgments established. Mortgage foreclosure depends on a judicial determination that the plaintiff possesses the right to enforce the mortgage. *See Laychock*, 2008 WL 2890962, at *3. I therefore cannot grant the relief that Mr. Aberman seeks without effectively reviewing and rejecting the Florida courts' judgments.

Mr. Aberman’s request for declaratory and injunctive relief does not alter that conclusion. *Rooker-Feldman* turns on the substance of the relief sought, not the label attached to it. Although Mr. Aberman characterizes Count V as seeking prospective relief concerning the Servicers’ future servicing and collection activities, the declaration that he requests rests on the premise that the Servicers lacked authority to prosecute the foreclosure proceedings that culminated in the Florida foreclosure judgments. I cannot issue that declaration without determining that those courts erred. Because Count V seeks precisely the type of de facto appellate review that *Rooker-Feldman* forbids, I lack subject matter jurisdiction over that claim.

**B. RESPA Claims**

Even though the *Rooker-Feldman* doctrine does not bar the RESPA claims in Counts I-III, those counts do not state plausible claims. Congress enacted RESPA to regulate the servicing of residential mortgage loans and to ensure that borrowers receive

required information about the servicing of those loans. *See* 12 U.S.C. § 2601(a); *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). But RESPA does not create liability whenever a servicer fails to satisfy one of its procedural obligations. To state a claim under Section 2605, a plaintiff must plausibly allege both a statutory violation and either actual damages that the violation caused or a pattern or practice of noncompliance sufficient to support statutory damages. *See* 12 U.S.C. § 2605(f); *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016). A complaint that alleges only a technical violation of RESPA, without plausibly alleging resulting damages, fails to state a claim. *See id.* at 785; *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).

Mr. Aberman's RESPA claims fall short for both reasons. The AC does not plausibly allege statutory violations, and it does not plausibly allege that any RESPA violation caused recoverable damages.

### 1. Count I —failure to provide servicing transfer notices

Count I alleges that the Servicers violated 12 U.S.C. § 2605(b) and (c) and 12 C.F.R. § 1024.33 by failing to provide required servicing-transfer notices. The AC, however, contains little more than the conclusory assertion that the Servicers failed to provide those notices. It does not identify which servicing transfer triggered RESPA's notice requirements, which Servicer failed to provide notice, when the notice should have been provided, or how the notices that the Servicers furnished failed to comply with the statute or regulation. Without factual allegations identifying the servicing transfers at issue and

the way the Servicers allegedly violated the statutory notice requirements, Count I does not plausibly allege a RESPA violation.

The damages allegations fare no better. Mr. Aberman seeks damages for lost rental income, lost equity, foreclosure losses, litigation expenses, and emotional distress, but he does not plausibly allege that those injuries resulted from any failure to provide servicing-transfer notices. At most, the AC alleges that the purported notice violations occurred during the same period as the foreclosure proceedings. Temporal overlap is not causation. *Giordano*, 160 F. Supp.3d at 785. Nor does the conclusory allegation that the Servicers engaged in a "pattern or practice" of violating RESPA plausibly support statutory damages. Count I therefore fails to state a claim.

**2. Count II — failure to respond to qualified written requests, notices of error, and requests for information**

Count II alleges that the Servicers violated 12 U.S.C. § 2605(e) and (k), together with 12 C.F.R. §§ 1024.35 and 1024.36, because they allegedly failed to respond adequately to qualified written requests, notices of error, and requests for information. The problem is that many of the requests identified in the AC do not concern mortgage servicing at all. Instead, they seek information regarding the Servicers' authority to foreclose following Mr. Aberman's bankruptcy proceedings, ownership of the promissory notes, and the Servicers' right to enforce the mortgage obligations. RESPA does not provide borrowers with a mechanism to litigate disputes concerning the validity of the debt, ownership of

the note, or a lender's authority to foreclose. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666-67 (9th Cir. 2012).

Even as to requests that arguably fall within RESPA, the AC never explains how the Servicers' responses violated the statute. Mr. Aberman alleges only that the responses were "inadequate," without identifying what information RESPA required the Servicers to provide, what they omitted, or how any particular response failed to comply with RESPA. Those allegations amount to legal conclusions rather than plausible factual allegations.

Nor does Count II plausibly allege recoverable damages. The injuries that Mr. Aberman identifies—lost equity, foreclosure-sale proceeds, litigation expenses, lost rental income, and similar losses—flow from the foreclosure proceedings, not from any allegedly deficient response to his correspondence. And, again, the AC pleads no facts supporting its conclusory allegation that the Servicers engaged in a pattern or practice of violating Section 2605. Count II therefore fails as well.

### 3. Count III — force-placed insurance

Count III alleges that the Servicers violated 12 C.F.R. § 1024.37 by obtaining force-placed insurance. The regulation prohibits a servicer from charging a borrower for force-placed insurance unless the borrower has failed to maintain required hazard insurance and the servicer first provides specified notices. *See* 12 C.F.R. § 1024.37. The AC does not plausibly allege those elements. It identifies no particular property on which a Servicer obtained force-placed insurance, no Servicers responsible for obtaining it, no allegation

that Mr. Aberman maintained hazard insurance at the relevant time, and no facts explaining which notice requirements the Servicers failed to satisfy. Instead, Count III just asserts that the Servicers violated the regulation.

The damages allegations suffer from the same defect as Counts I and II. Although Mr. Aberman seeks compensation for force-placed insurance premiums and related losses, he does not plausibly allege that those damages resulted from any violation of Section 1024.37 rather than from the underlying defaults, insurance disputes, or foreclosure proceedings. Nor does he plead facts supporting statutory damages based on a pattern or practice of noncompliance. Count III therefore fails to state a claim.

## IV. CONCLUSION

Mr. Aberman has not stated a viable federal claim. Counts IV and V seek relief from injuries caused by the Florida foreclosure judgments and therefore are barred by the *Rooker-Feldman* doctrine. Although the *Rooker-Feldman* doctrine does not bar the RESPA claims in Counts I-III, Mr. Aberman has not plausibly alleged violations of RESPA or recoverable damages. I will therefore grant the Servicers' Motion to dismiss the Amended Complaint. Mr. Aberman cannot seek leave to amend Counts IV and V. If there are facts that he can plausibly allege to cure the defects with Counts I-III, he may seek leave to do so. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 10, 2026